IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDMUNDO FEDERICO,

        Plaintiff,

vs.                                                          No. CIV 98-549 BB/LFG

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant.

## **MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

      Plaintiff Edmundo Federico ("Federico") invokes this Court's jurisdiction under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Federico was not eligible for disability insurance benefits ("DIB"). Federico moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing.

      Federico was born on March 16, 1951 and was 44 years old at the time of the administrative hearing. He completed five years of schooling in Mexico and is illiterate and unable to communicate in English. His past work experience is as a construction laborer. He alleges that he has been unable to work since March 27, 1991 due to an injury to his right wrist, necessitating surgery.

      Federico's application was denied at the initial and reconsideration stages, and he sought timely review from an Administrative Law Judge ("ALJ"). An administrative hearing was held on

---

[1]Within ten (10) days after a party is served with a copy of the legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

April 4, 1995. In a decision dated July 28, 1995, the ALJ found that Federico was not disabled within the meaning of the Social Security Act, and he denied the benefit request.[2] Federico challenged this determination to the Appeals Council, which denied his request for review on March 27, 1998. This appeal followed.

## **Standards for Determining Disability**

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the Commissioner at step five. If at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are: at step one, claimant must prove he is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . .;"[6] at step three, the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving he is incapable of meeting the

---

[2]The decision of the ALJ is attached to this Analysis and Recommended Disposition as Attachment A.

[3]20 C.F.R. § 404.1520(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[4]20 C.F.R. § 404.1520(a)-(f)(1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5]20 C.F.R. § 404.1520(b)(1999).

[6]20 C.F.R. § 404.1520(c)(1999).

[7]20 C.F.R. § 404.1520(d) (1999). If a claimant's impairment meets certain criteria, that means his impairments are "severe enough to prevent [him] from doing any gainful activity." 20 C.F.R. § 416.925

physical and mental demands of his past relevant work.[8]

If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, he is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that work.[11] In the case at bar, the ALJ made his dispositive determination of non-disability at step five of the sequential evaluation.

Federico contends that the final administrative decision is not supported by substantial evidence, that the Commissioner did not carry his burden of proof, and that the Commissioner did not apply the correct legal standards.

**Standard of Review and Allegations of Error**

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir.

---

(1999).

[8]20 C.F.R. § 404.1520(e) (1999).

[9]The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[10]20 C.F.R. § 404.1520(f) (1999).

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

3

1992); Muse, at 789.  In Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.  (citations omitted).

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.

Federico claims the ALJ erred in the following ways:  (1) at step three, he found that Federico's condition did not meet or equal one of the listings;  (2) he failed to take into account Federico's pain in finding that he has the RFC to perform a full range of light work; (3) he should not have applied the grids conclusively, given the evidence of non-exertional impairments; (4) his credibility finding was flawed; and (5) he failed to develop the record.

## **Evidence of Claimant's Impairment**

On March 27, 1991, Federico sustained a severe injury to his right wrist while working on a construction site.  He had raised his right (and dominant) arm to prevent a 20-foot length of sewer pipe from falling onto his shoulder.  The pipe fell onto his hyperextended palm and fractured the scaphoid[12] bone in his wrist.  (Tr. 60-61, 100-102, 147).  He also sustained a disruption of the

---

[12]Scaphoid = Os scaphoideum: the most lateral bone in the proximal row of carpal bones.  Dorland's Illustrated Medical Dictionary 938 (26th ed. 1981) (hereafter referred to as Dorland's).

4

ligament between the lunate and triquetral bones,[13] and an injury to the triangular fibrocartilage.[14] (Tr. 80-81, 98-99, 100-102, 104-106, 109, 111-112).

Federico went to the emergency room the day after his injury. He was placed in a thumb spica cast for four months and was given several laboratory tests in November 1991, including x-rays, a bone scan and a wrist arthrogram.[15] (Tr. 110-101). In December 1991, Federico was referred to Dr. George R. Swajian, who treated him continuously for several years thereafter. (Tr. 100-104). Federico was still experiencing weakness and severe pain in his right wrist as of February 1992. (Tr. 98). Dr. Swajian treated him conservatively for another year, and in April 1993, he performed fusion surgery on the lunate-triquetral joint. (Tr. 89-91, 104).

The surgery was successful, and the bones fused and healed as they should have. However, Federico continued to have pain in his right wrist and returned to his physician approximately monthly in 1993 and several times in 1994-95, seeking pain relief . (Tr. 58, 60-61, 66-68, 71, 73-74, 75-89, 104-108, 110). He has used Darvocet, Lodine, and non-prescription Tylenol for pain and inflammation. (Tr. 77, 114, 149). There is some indication in the record that, while Federico's bone fracture was diagnosed and treated appropriately, the tear to his triangular fibrocartilage may have been overlooked, and that as late as the administrative hearing, this problem was still causing him pain and would require further surgery. (Tr. 102, 103, 104-106, 109, 111-112).

---

[13]Triquetal = os triquetrum: a bone in the proximal row of carpal bones. Lunate = os lunatum: bone in the proximal row of carpal bones lying between the scaphoid and triquetral bones. Dorland's, at 938.

[14]Fibrocartilage: an anatomical structure composed of cartilage the matrix of which contains a considerable amount of fibrous tissue. Dorland's, at 500.

[15]Arthrogram: an x-ray record taken after injection of opaque contrast material into a joint. Dorland's, at 122.

## Listing of Impairments

Federico asserts that his wrist condition fits within Listing 1.13 (20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.13), "Soft tissue injuries of an upper or lower extremity." This listing requires that the injury must have involved:

> a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset.

The ALJ found that Federico's wrist injury does not fall within Listing 1.13, because that section "pertains to soft tissue injuries of an extremity, and does not address joint problems [emphasis in original]." (Transcript, at 10).[16] Federico argues that this is an incorrect assumption, resulting from a misreading by the ALJ of the definition of "major joint" in § 1.00(D), under which the ALJ erroneously defines a wrist solely as a major joint, rather than an "upper extremity." The government counters that Listing 1.13 requires that the "series of staged surgical procedures" must occur "within 12 months after onset," and that Federico's first surgery occurred on April 6, 1993, which was well over a year after his injury in March 1991.

The record shows that Federico did indeed suffer a soft tissue injury. In addition to fracturing the scaphoid bone in his wrist, he also disrupted a ligament in his wrist and sustained a tear of the triangular fibrocartilage. (Tr. 62-65, 80-81, 97, 98-99, 100-102, 104-106,107, 109, 111-112). Following the ALJ's decision, Federico's treating physician, Dr. George R. Swajian, clarified the type of injury which Federico sustained in 1991 as both a bone fracture and a ligamentous disruption, the latter of which he classified as a soft tissue injury. (Tr. 125).

---

[16]Transcript references will hereafter appear in the format, ("Tr. 10").

However, the ALJ was correct in his finding that Listing 1.13 does not apply to Federico's condition. Although he did sustain a severe injury to the soft tissue in an upper extremity, Listing 1.13 requires "a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored within 12 months after onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.13. This section has been interpreted to cover those situations

> where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work because of these repeated surgical procedures. This interpretation is supported by the phrases "staged surgical procedures" for "salvage and/or restoration." Under Waite's interpretation, this language would be unnecessary. If the regulations, as Waite claims, were intended to grant benefits to one who has lost the use of an extremity for twelve months or more, then the wording of the listing would have been that simple.

Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir. 1987).

Under Listing 1.13, a claimant is deemed disabled because he is unavailable for employment "due to the surgical procedures," Lapinsky v. Secretary of Health & Human Servs., 857 F.2d 1071, 1073 (6th Cir. 1988); thus, the listing "addresses only those situations in which the surgical procedures themselves contribute to the claimant's inability to work." Knepp v. Apfel, 204 F.3d 78 (3d Cir. 2000). "The focus of listing 1.13 is the disabling effect of the surgical procedures, not the pain and loss of function from the injury itself." O'Neill v. Shalala, 32 F.3d 571 (Table, text in Westlaw), No. 93-3291, 1994 WL 421762, at *1 (8th Cir. Aug. 15, 1994). The Listing is intended to allow a period of recovery for surgical restoration of an impaired limb. Knepp, at 86. In addition, the disabling surgical procedures must have occurred within 12 months of the injury.

7

Federico sustained his wrist injury March 1991. At that time, he was placed in a thumb spica cast for four months. Surgery was scheduled for September 1992 but was postponed until April 1993. This was Federico's first surgical procedure. (Tr. 89-99, 100-102). He clearly does not come within the restrictions of Listing 1.13, which require that he undergo "a series of staged surgical procedures within 12 months after onset . . .." His disability was caused by the injury, not by any surgeries performed in the one-year period after the injury. Listing 1.13 is therefore inapplicable to his condition, and the ALJ did not err in so finding. The opinion of Federico's treating physician that his client's injury falls within § 1.13 (Tr. 103) is not conclusive. 20 C.F.R. § 404.1527(e)(2); Knepp, at 87; Waite, at 1359 ("an ALJ is not bound by a doctor's conclusion that a claimant is 'disabled' because he meets the requirements of a certain listing").

## The ALJ's Credibility Finding

At step five, the ALJ found that Federico had the residual functional capacity for the full range of light work, that Federico's allegations of pain were not credible, and that he had no nonexertional impairments which would preclude conclusive use of the Medical Vocational Guidelines ("grids"), at 20 C.F.R. Pt. 404, Subpt. P, App. 2. Federico's second and fourth assignments of error are aimed at the ALJ's finding that Federico's allegations of pain were not credible, and that therefore his pain did not constitute a nonexertional impairment.

By the time he reached step five, the ALJ had determined that Federico was not presently engaged in substantial gainful activity, that he had a medically severe impairment which did not meet or exceed one of the listings, and that his impairment prevented him from doing his past work. There was no error in these findings. However, the ALJ then determined that Federico's "testimony of subjective complaints" of pain was not supported by the evidence, and that he has the RFC to perform

8

most of the duties of light work, unimpeded by any nonexertional limitations.

The ALJ stated in his opinion that he gave "due deference to [Federico's] complaints," that he "weigh[ed] both the objective and subjective elements in the record as they have otherwise appeared to this Judge," and that he "has taken into consideration the claimant's subjective complaints." (Tr. 11). Without giving any details, the ALJ points to lack of corroboration by objective medical findings as one reason for rejecting Federico's allegations of pain as not credible. (Id.).

The Court does not reweigh the evidence or substitute its decision for that of the ALJ; however, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). The Court must review the record as a whole, and "the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Talbot v. Heckler, 814 F.2d 1456, 1461 (10th Cir. 1987).

A claimant who alleges disabling pain must present evidence of medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of an impairment that could "reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529; 42 U.S.C. § 423(d)(5)(A). Once the claimant demonstrates an impairment and at least a loose nexus between the impairment and the pain alleged, the ALJ must consider "all the evidence presented that could reasonably produce the pain alleged." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). Factors to be considered include the claimant's persistent attempts to find relief for the pain, his willingness to try any treatment prescribed, whether he had regular contact with a doctor, the possibility that psychological disorders combine with his physical

9

problems, the nature of his daily activities, the dosage and effectiveness of any medications, and subjective measures of credibility that are peculiarly within the judgment of the ALJ. Id.; Hargis v. Sullivan, 945 F.2d 1482, 1488 (10th Cir. 1991).

As noted above, Federico sustained a severe injury to his right wrist in March 1991, involving a fractured bone, disrupted ligament, and a tear in the fibrocartilage. He was still experiencing pain nine months later, when he first saw Dr. Swajian. (Tr. 100). In February 1992, he returned to Dr. Swajian with complaints of severe pain in the right wrist, radiating into his forearm, and inability to use his right hand due to weakness. (Tr. 98-99). In March 1992, Dr. Swajian noted Federico's continued pain and ordered an MRI, which showed changes consistent with carpal instability and ligament disruption. He noted that surgery should be considered. (Tr. 97).

From June 1992 until April 1993, Dr. Swajian saw Federico six times, eventually deciding that surgery would be necessary. (Tr. 90-96). On August 3, 1992, Dr. Swajian noted that "surgery is primarily being done to help reduce his pain and it does not necessarily mean that he will have a hundred percent relief. The main object is to reduce the pain level to make him functional and comfortable." (Tr. 94). For several months following the April 1993 surgery, the healing process appeared to be proceeding normally. (Tr. 84-89).

However, by the October 19, 1993 visit, Federico was still complaining of generalized pain in his forearm and wrist. Dr. Swajian noted at this time that the bones and surgical site were healing well, and he thought there may be some "psychological overlay" to Federico's continued complaints of pain. (Tr. 82-83). Federico attempted to return to work, but in December 1993, he experienced considerable pain in performing a torquing motion with a wrench while working on an automobile. Dr. Swajian felt that he was "working far beyond his capability with respect to the surgery." (Tr. 78-

79). On January 6, 1994, Federico returned to Dr. Swajian, complaining of swelling in his right wrist, aggravated by activity. He was put in a wrist immobilizer and given Lodine, a painkiller and anti-inflammatory agent. (Tr. 77). On January 19, 1994, Federico was still experiencing severe pain in his right wrist which had not subsided, either with activity or at rest. X-rays at this time showed that the bones were fusing well, and Dr. Swajian was at a loss to determine the cause of Federico's pain. (Tr. 75-76).

In April 1994, Federico complained of persistent pain in the wrist, along with cold intolerance, numbness in the hand, and pain in the fingers and finger joints. He reported no improvement in his symptoms since the surgery one year earlier. (Tr. 61). A tomogram[17] was performed in May 1994; it showed good bony fusion at the site of the earlier surgery. The hand surgeon to whom Federico had been referred, Dr. Richard Gobeille, suspected radial tunnel syndrome.[18] (Tr. 58, 71). However, this was ruled out in a electrophysical examination done in June 1994. (Tr. 66-69).

In September 1994, Federico returned to Dr. Swajian, again complaining of pain in his right wrist. The doctor noted that the bony injury had healed and there was no evidence of any nerve injury. He recommended a bone scan. (Tr. 73-74). This was done in January 1995, as was an arthrogram and an MRI of the right wrist. These showed solid bony fusion but also showed findings consistent with a tear through the mid portion of the triangular fibrocartilage, which might have been present from the beginning or might have resulted from a post-surgery injury. (Tr. 104-110). Dr. Swajian noted at this time that, until the rupture of the triangular fibrocartilage is corrected, Federico

---

[17]Tomography: the recording of internal body images at a predetermined plane. Dorland's, at 1374.

[18]Radial tunnel syndrome: compression of the superficial branch of the radial nerve, resulting in tearing pain into the back of the forearm and hand. Merck Manual of Diagnosis and Therapy 492 (Mark H. Beers & Robert Berkow, eds., 17th ed. 1999).

11

would continue to have pain. (Tr. 104-105).

In February 1995, Federico was examined by Dr. Stephen C. Drukker, a hand surgeon, apparently at the request of attorneys representing an insurance company. Dr. Drukker noted that Federico's pain emanated from the triangular fibrocartilage area and he did not feel that the bone fracture, by now solidly healed, was a source of pain. He stated further that "review of the records shows that this was indeed a severe injury," involving both a fracture of the scaphoid bone and a tear of the lunatotriquetral ligament. He felt there was a high likelihood that the triangular fibrocartilage was also torn at the time of the original injury. (Tr. 111-112). He concluded:

> given the severity of his pain at the time I examined him, I doubt whether conservative therapy utilizing cortisone injections and another course of therapy would make a significant impact in his discomfort. Accordingly, I would recommend surgical treatment, which would include both an ulnar osteotomy . . . [and] repair or debridement of the triangular fibrocartilage complex.

(Tr. 112).

Federico does not speak English, and he has had only five years of schooling. (Tr. 43, 45, 144). The forms he filled out for the Social Security Administration were completed with the help of more literate friends and representatives. (Tr. 56). In these forms, he did not describe his pain, or other aspects of his impairment, in any great detail. However, he did state in a Disability Report dated May 1994 that his wrist was "still the same" since the surgery, and "I have pain all the time." (Tr. 39). The administrative hearing was quite short. Federico testified through an interpreter that he used prescription medication for the pain, including Darvocet (Tr. 149), but neither his attorney nor the ALJ asked him any questions about the extent, duration, or location of any pain he had experienced since the injury.

There is no question that Federico has demonstrated a pain-causing impairment. A 20-foot length of pipe hit him in the hand, bent his wrist back into a hyperextended position, fractured a wrist bone, and disrupted the ligament connecting lunate and triquetal carpal bones. Although the bones have healed, he also sustained an apparently undiagnosed, and hence untreated, tear in the triangular fibrocartilage, which has caused him pain since March 1991. He has made persistent attempts to find relief for the pain. The record shows numerous, regular visits to his doctor in the years following the fusion surgery, and myriad references to Federico's pain symptoms in Dr. Swajian's records. "[W]e have consistently required the ALJ to consider assessments of the subjective pain, at least where they have been made by treating physicians." Huston, at 1130.

There is little on the record to show the nature of Federico's daily activities, but they appear to be limited, and in any case are not inconsistent with a level of severe pain. He stays indoors most of the day, listening to the radio and watching television. He can do light household work, but usually a friend does housecleaning for him. He does his own shopping but does not prepare meals. He can drive a car short distances. He does not belong to any clubs and has no hobbies. He can care for his own personal needs but has to move slowly in doing so. (Tr. 39-46, 47-50, 51-56). He takes Darvocet regularly and was prescribed Lodine at one point; both are pain medications.

The factors found relevant to an assessment of the credibility of pain allegations, as set out in Luna v. Bowen, *supra*, lead the Court to conclude that the ALJ erred in finding that the record does not support Federico's claims of pain. Federico himself does not, in his testimony nor in the forms he filled out for the SSA, explain in great detail how his wrist pain limits his ability to work. However, the implication arises irresistibly from the record that Federico has experienced continuing pain in his right wrist since he was injured in March 1991, arising from a broken bone, disrupted

ligament, and an untreated tear in the triangular fibrocartilage.

The final factor mentioned in Luna is the "subjective measure of credibility . . . peculiarly within the judgment of the ALJ." In this regard, the Court notes that the ALJ had very little opportunity to observe Federico's demeanor at the administrative hearing. Federico gave his name and address, described the accident which caused his injury, briefly discussed the medical treatment he has undergone as a result of his injury, and gave a one-word answer to a question about his prognosis. (Tr. 146-149). The ALJ did not ask Federico any questions.

Although the Court does not agree with Federico's argument that the ALJ thereby failed in his duty to develop the record, nevertheless, the Court cannot give much weight to a credibility determination made on such a scanty record. The ALJ "must articulate specific reasons for questioning the claimant's credibility," Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ did not do so in this case. The Court rejects, as not supported by substantial evidence, the ALJ's finding that Federico's allegations of pain are not credible.

**Reliance on the Grids**

The Court agrees with Claimant that the ALJ erred in applying the grids without seeking the opinion of a vocational expert as to Federico's capacity to perform other jobs in the national economy. The record does not contain substantial evidence to support a finding that Federico was capable of performing a full or wide range of light work, unimpaired by nonexertional limitations. Such a finding is a prerequisite for relying on the grids. Trimiar, at 1333.

The ALJ found that Federico could perform the full range of light work, and that "[t]here are no significant nonexertional limitations." (Tr. 14). RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). Social Security regulations require that in making a finding

14

of the claimant's RFC, the ALJ must take into account all of the claimant's impairments and must base his determination on all of the relevant evidence, medical and non-medical. 20 C.F.R. § 404.1545(e).

Pain can be a nonexertional impairment. Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984). Since "nonexertional limitations are not factored into the grids, but must be taken into account in determining a claimant's RFC, the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his ability to perform the full range of work in a particular RFC." Williams, at 752 (internal quotation marks omitted). In such a case, the grids may be used as a framework but cannot dictate the ALJ's conclusion. Huston, at 1131. Indeed, "whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the [Commissioner] must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." Hargis, at 1491.

The record shows that the ALJ's finding that "[t]here are no significant nonexertional limitations" lacks the requisite evidentiary support. The record evidence of Federico's pain throughout the years following his 1991 injury is outlined above. His treating physician noted that, almost three years after the accident, Federico was still experiencing severe pain in his right wrist, whether he was active or at rest. (Tr. 75). "Nonexertional pain perhaps can best be characterized as pain that is present whether or not a claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges." Huston, at 1131. The Court does not substitute its judgment for that of the ALJ on findings of fact; however, the record does not support the finding that nonexertional impairments had no significant effect on Federico's capacity to work. It was therefore error to apply the grids conclusively in this case. Teter v. Heckler, 775 F.2d 1104,

1105 (10th Cir. 1985).

At step five, the Commissioner must shoulder the burden of showing that the claimant can perform work in the national economy, given his exertional and nonexertional limitations. Huston, at 1132. "The [Commissioner] must demonstrate that sufficient jobs exist in the national economy that the claimant may perform given the level of pain he suffers." Hargis, at 1490. On remand, the ALJ must solicit expert vocational testimony or other similar evidence to show that Federico can perform work in the national economy notwithstanding his pain.

## **Recommended Disposition**

That Federico's Motion to Reverse and Remand [Doc. 8] be granted and the matter be remanded to the Commissioner for proceedings consistent with this analysis.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge